IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02089-CMA-NYW

SERVICE FIRST PERMITS, LLC,

    Plaintiff,

v.

LIGHTMAKER VANCOUVER (INTERNET) INC.,
LIGHTMAKER UK LTD., and
ADRIAN BARRETT,

    Defendants.

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter comes before the court on the following motions:

(1) Defendant Adrian Barrett's Motion to Dismiss Pursuant to Fed.R.Civ.P 12(b)(2) ("Motion to Dismiss"), filed October 19, 2018, [#19];

(2) Plaintiff Service First Permits, LLC's Motion for Leave to Conduct Jurisdictional Discovery in Support of Opposition to Motion to Dismiss ("Motion for Jurisdictional Discovery"), filed November 14, 2018, [#30]; and

(3) The Parties' Stipulated Motion to Stay Proceedings Pending Resolution of Motion to Dismiss (Dkt. 19) ("Motion to Stay"), filed December 14, 2018, [#45].

The undersigned considers the Motions pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and the memoranda dated October 22, 2018 [#20], November 15, 2018 [#31], and December 17, 2018 [#46]. This court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, having reviewed the Motions and associated briefing, the applicable case

law, and the entire case file, this court respectfully **RECOMMENDS** that the Motion to Dismiss be **DENIED**, and this court further **ORDERS** that the Motion for Jurisdictional Discovery and Motion to Stay are **DENIED**.

## BACKGROUND

This court draws the following facts from the Complaint and presumes they are true for purposes of the instant Motions. Plaintiff Service First Permits, LLC ("Plaintiff" or "Service First") is a Colorado limited liability company that "provides personalized construction permit management services to its clients," including "services rang[ing] from commercial construction permitting to due diligence to regulatory processes, among others." [#1 at 2, 3]. About June 20, 2017, Plaintiff signed an agreement with Defendants Adrian Barrett ("Defendant Barrett") and Lightmaker Vancouver (Internet), Inc. ("Lightmaker Vancouver") for Defendant Barrett and Lightmaker Vancouver's development of a minimal viable product ("MVP")—"a simpler version of a website that is functional but does not contain all of the features of the final product"—for Service First. *See* [*id.* at 4]. "The parties agreed to a six-month timeline with the final stage being the quality assurance, beta testing, and launch of the MVP. Service First agreed to pay Lightmaker [Vancouver] $30,000 per month for a total of $180,000 over this six-month period in return for a functional MVP." [*Id.*]. Then, sometime in "late June 2017," Defendant Barrett traveled to Colorado to meet at Service First's principal offices to begin the "discovery" phase of the development process; this lasted several days. *See* [*id.* at 5].

Service First alleges that development of the MVP did not proceed according to schedule, resulting in a three-month extension of the agreement, through March 2018,

2

for an additional $30,000 per month.  *See* [#1 at 5].  As of March 2018, Defendant Barrett and Lightmaker Vancouver were not near completion of the MVP so Defendant Barrett transferred Plaintiff's project to its United Kingdom affiliate Lightmaker UK Ltd. ("Lightmaker UK", and collectively with Defendant Barrett and Lightmaker Vancouver, "Defendants") and extended the agreement a second time.  *See* [*id.* at 5-6].  About June 2018, near the conclusion of the second extension, the MVP was not complete or functional.  *See* [*id.* at 6].  Defendants claimed that they needed more time and money to continue work on the MVP; Plaintiff refused, however, and terminated the relationship.  *See* [*id.*].  Plaintiff then sought return from Defendants of the $282,000 Plaintiff had paid for the MVP, to which Defendant Barrett responded that he had dissolved Lightmaker UK due in part to its work with Service First and generally denied any wrongdoing.  *See* [*id.* at 7].

Plaintiff initiated this action on August 16, 2018.  [#1].  Plaintiff asserts several claims against Defendants based on their failure to develop a functional MVP.  These include: (1) breach of contract against Lightmaker Vancouver and Lightmaker UK; (2) breach of the implied covenant of good faith and fair dealing against Lightmaker Vancouver and Lightmaker UK; (3) breach of an implied contract against Defendants; (4) promissory estoppel against Defendants; (5) unjust enrichment against Defendants; and (6) alter ego liability against Defendants.  *See generally* [*id.*].

On September 26, 2018, Lightmaker Vancouver filed an Answer and Counterclaim in response to the Complaint.  *See* [#10].  Defendant Barrett filed his Motion to Dismiss on October 19, 2018, arguing that Plaintiff fails to plead Defendant Barrett's minimum contacts with Colorado sufficient for this court to exercise personal jurisdiction over him.

3

*See* [#19]. Service First opposes the Motion to Dismiss, arguing that it adequately pleads Defendant Barrett's minimum contacts with Colorado; alternatively, in its Response to the Motion to Dismiss and in its Motion for Jurisdictional Discovery, Plaintiff requests limited jurisdictional discovery on the issue of personal jurisdiction over Defendant Barrett. *See* [#27; #30]. On December 14, 2018, the Parties filed the Motion to Stay, requesting that the court stay this matter pending its resolution of the Motion to Dismiss. *See* [#45]. The Motions are now ripe for consideration, and I turn to each below.

## LEGAL STANDARDS

### I. Rule 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the court's personal jurisdiction over the named parties. Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of demonstrating that the court has personal jurisdiction over Defendant Barrett. *See Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1069 (10th Cir. 2008). When, as here, the district court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The court's focus is upon Defendant Barrett's relationship with the District of Colorado and this litigation; so long as it creates a substantial connection" with this District, even a single act can support jurisdiction. *Leachman Cattle of Colorado, LLC v. Am. Simmental Ass'n*, 66 F. Supp. 3d

1327, 1336 (D. Colo. 2014). In considering whether Defendant Barrett has sufficient contacts with this District to support the court's exercise of personal jurisdiction, the court must accept all well pleaded facts and must resolve any factual disputes in favor of Plaintiff. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

### A. Jurisdictional Discovery

To the extent that the court is inclined to dismiss for lack of personal jurisdiction, Plaintiff seeks jurisdictional discovery to establish Defendant Barrett's relevant contacts with this forum. [#27 at 12-13; #30]. "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1227 (D. Colo. 2009) (quoting *Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). Whether to allow jurisdictional discovery is within "the broad discretion" of the trial court. *Id.* The court abuses its discretion if the denial of limited discovery results in prejudice to a litigant. *Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" *Id.* To obtain jurisdictional discovery, a plaintiff must "present a sufficient factual predicate for the establishment of personal jurisdiction." *Gordon Howard Assocs. v. Lunareye, Inc.*, No. 13-CV-01829-CMA-MJW, 2013 WL 5637678, at *4 (D. Colo. 2013) (citing *St. Paul Travelers Cas. & Sur. Co. of Am. v. Guar. Bank & Tr. Co.*, No. 05-CV-00968-REB-BNB, 2006 WL 1897173, at *4 (D. Colo. 2006)).

## II. Stay of Discovery

Whether to stay discovery is a matter left to the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Although courts in this District generally disfavor the stay of all discovery, *see Wason Ranch Corporation v. Hecla Mining Co.*, No. 07-CV-00267-EWN-MEH, 2007 WL 1655362, at *1 (D. Colo. June 6, 2007), "a stay may be appropriate if resolution of a preliminary motion may dispose of the entire action," *Elec. Payment Sys., LLC v. Elec. Payment Sols. of Am., Inc.*, No. 14-CV-02624-WYD-MEH, 2015 WL 3940615, at *1 (D. Colo. June 25, 2015) (internal quotation marks omitted). Indeed, "a stay of discovery during the pendency of a dispositive motion asserting a jurisdictional challenge may be appropriate and efficient." *Sandoval v. United States*, No. 11-CV-01533-REB-KLM, 2011 WL 3682768, at *2 (D. Colo. Aug. 23, 2011). The appropriateness of a stay depends on (1) the plaintiff's interests in expeditiously litigating this action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).

## ANALYSIS

### I. Motion to Dismiss - Personal Jurisdiction

"The requirement that a court have personal jurisdiction flows from the Due Process Clause. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (brackets, ellipses, and internal quotation

marks omitted).  "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). "Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, extends jurisdiction to the [United States] Constitution's full extent.  The personal jurisdiction analysis here is thus a single due process inquiry." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (internal case citations omitted).

"To exercise jurisdiction in harmony with due process, defendant[] must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (brackets and internal quotation marks omitted). The minimum contacts may give way to specific or general jurisdiction. *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  General jurisdiction exists when the defendant's contacts with the forum are "'so continuous and systematic as to render [it] essentially at home in the forum State.'" *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Specific jurisdiction exists when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) (internal quotation marks omitted).

It is undisputed that the court does not have general jurisdiction over Defendant Barrett; thus, I focus on specific jurisdiction. To exercise specific jurisdiction over Defendant Barrett, Plaintiff must make a prima facie showing of Defendant Barrett's contacts with the forum that are more than just "random, fortuitous, or attenuated," such that he should "reasonably anticipate being haled into court there." *Monge v. RG Petro-Mach. (Grp.) Co. Ltd.*, 701 F.3d 598, 613 (10th Cir. 2012). The court must therefore examine the "quantity and quality" of Defendant Barrett's contacts with Colorado and determine whether a nexus exists between those contacts and Plaintiff's cause of action. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010).

### A. Minimum Contacts

In the context of contract claims, courts consider "whether the defendant purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state." *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1282 (10th Cir. 2016) (internal quotation marks omitted). "An individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state." *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007). Instead, courts inquire into the defendant's "'prior negotiations and contemplated future consequences,'" the terms of the contract, and the parties' actual course of dealing. *See Old Republic Ins. Co.*, 877 F.3d at 905 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985)). Further, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005)

(internal quotation marks omitted). And a contract's choice-of-law provision implicating the law of the forum is also relevant. *See Far W. Capital, Inc.*, 46 F.3d at 1080 n.7.

Defendant Barrett argues that Service First fails to plead that he had sufficient minimum contacts with Colorado to establish specific personal jurisdiction. *See* [#19 at 5-6; #38 at 3-4]. Defendant Barrett states that Service First's single allegation that he traveled to Colorado and visited Plaintiff's office is insufficient. *See* [#19 at 5-6; #38 at 3-4]. This court respectfully disagrees.

As Defendant Barrett acknowledges, Service First alleges,

> In late June 2017, Barrett visited Colorado and Service First's principal offices for the "discovery" phase of the development process. Service First gave him broad access to its proprietary information, and he spent an entire day or two at the offices reviewing Service First's internal operations and business processes. Barrett was in Colorado on this trip for multiple days.

[#1 at p. 5, ¶ 12]. The Complaint also alleges that Defendant Barrett "had Service First enter into a three-month extension until March 2018" as well as a second extension when Defendant Barrett transferred the MVP to Lightmaker UK. *See* [*id.* at 5-6]. Attached to the Complaint[1] is a letter addressed to Service First from Defendant Barrett wherein he states, "I was on most of the demo calls when Arron LeClair did the sprint demos every two weeks." *See* [#1-5 at 3]. Also attached to the Complaint is the MVP agreement which states, "This Agreement shall be governed in all respects by the laws of the **State of Colorado, USA**," and which Defendant Barrett signed on behalf of Lightmaker Vancouver. *See* [#1-1 at 4, 11 (emphasis in original)]. In Response to the Motion to

---

[1] "In addressing a [Rule 12(b)(2)] motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (brackets and internal quotation marks omitted).

9

Dismiss, Plaintiff further asserts that Defendant Barrett "was a central figure throughout the parties' relationship," that Defendant Barrett "drafted and executed the contract at issue," that Defendant Barrett "participated in bi-weekly demo meetings," and that Defendant Barrett "negotiated and obtained two extensions [of the agreement]." [#27 at 8].[2]

I find that Service First sufficiently establishes Defendant Barrett's minimum contacts with Colorado. It is reasonable to infer that Defendant Barrett purposefully availed himself of the privilege of conducting activities within Colorado, even if the work performed occurred outside the forum. Service First is a Colorado business, Defendant Barrett traveled to Colorado and visited Service First's principal office during the "discovery" phase of the agreement, Defendant Barrett's letter admits to engaging in bi-weekly demos for Service First, Plaintiff alleges Defendant Barrett negotiated two extensions of the agreement, and Colorado law governs the agreement; these are sufficient minimum contacts with Colorado. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1077-78 (10th Cir. 2004) (finding minimum contacts with Colorado where the defendant "engag[ed] in a business relationship with Mr. Benton, who operates his business from Colorado," "sent representatives to Colorado . . . to maintain and further that business relationship," and "voluntarily conducted business with Mr. Benton, whom [the defendant] knew to be located in Colorado").

---

[2] Ordinarily, a plaintiff may not supplement or amend its Complaint by additional factual allegations contained in a response to a motion to dismiss. *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (finding that a plaintiff may not further amend a Complaint by alleging new facts in response to a motion to dismiss). Here, however, these arguments appear supported by the correspondence from Defendant Barrett attached to the Complaint. [#1-5]. Even without considering these additional facts, this court would still recommend denial of the motion to dismiss.

This is not a situation in which Service First seeks to impute Lightmaker Vancouver's or Lightmaker UK's contacts with Colorado to Defendant Barrett (i.e., the no-imputed-contacts rule). *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there."); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him").[3] Rather, the above contacts are Defendant Barrett's own. *Cf. Rusakiewicz v. Lowe*, 556 F.3d 1095, 1101-03 (10th Cir. 2009) (holding that the district court had specific personal jurisdiction over individual-defendants because the individual-defendants, acting as corporate officers, supported and authorized tortious conduct in the forum). Nor would Defendant Barrett's status as a corporate officer or employee shield his contacts from the court's exercise of personal jurisdiction (i.e., the fiduciary shield doctrine). *See Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1017–19 (10th Cir. 1990); *see also Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013) (holding that the fiduciary shield doctrine is a matter of state law, and refraining from applying it when state law had not adopted it); *Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1166 (D. Colo. 2016) (noting that courts in this District have not found support for the application of the fiduciary shield doctrine in Colorado).

Accordingly, I conclude that Service First establishes Defendant Barrett's minimum contacts with Colorado. I now consider whether maintaining personal jurisdiction over

---

[3] For this reason, this court does not address Plaintiff's arguments for personal jurisdiction over Defendant Barrett under an alter ego theory. *See* [#27 at 10-12].

Defendant Barrett in Colorado would offend traditional notions of fair play and substantial justice.

### B. Traditional Notions of Fair Play and Substantial Justice

When a plaintiff establishes the defendant's minimum contacts with the forum, it is defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Pro Axess, Inc.*, 428 F.3d at 1280 (internal quotation marks omitted). Courts consider several factors when making such an inquiry:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167 (10th Cir. 2011).

Defendant Barrett does not address in his Motion to Dismiss or his Reply the reasonableness of this court maintaining personal jurisdiction over him, arguing only that Plaintiff fails to establish the requisite minimum contacts. *See* [#19; #38]. Indeed, Service First contends that this failure is reason enough to find that exercising personal jurisdiction over Defendant Barrett in Colorado is reasonable. *See* [#27 at 10]. While this may be so, this court independently concludes that the first four factors (with the fifth being neutral) render the exercise of personal jurisdiction over Defendant Barrett reasonable in this forum.

*First*, though Defendant Barrett is a Canadian citizen, he does not explain how this may impose a burden on him, and "in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road.'" *Dudnikov*, 514

12

F.3d at 1081. Further, this District's long-standing practice requires parties to take depositions at a location convenient to the witness when a deponent resides at a substantial distance from the deposing party, even if that witness is also a party, thereby mitigating any potential hardships associated with conducting discovery in Colorado. *See Metrex Research Corp. v. United States*, 151 F.R.D. 122, 125 (D. Colo. 1993). **Second**, Colorado has an interest in resolving a contract dispute involving a Colorado business, especially where the Parties agreed that Colorado law would govern their contractual relationship. **Third** and **fourth**, Service First has an interest in pursuing its claims entirely in this District without having to initiate a potential parallel action against Defendant Barrett in a different forum; thus, the most efficient resolution of this controversy is in this District.

Based on the foregoing, this court concludes that it may exercise personal jurisdiction over Defendant Barrett. I therefore respectfully **RECOMMEND** that the Motion to Dismiss be **DENIED.**

II. **Motion for Jurisdictional Discovery and Motion to Stay**

Plaintiff moves in the alternative for an opportunity to conduct limited jurisdictional discovery in opposition to the Motion to Dismiss. *See* [#27; #30]. Additionally, the Parties jointly moved for a stay of these proceedings pending the court's consideration of the Motion to Dismiss. [#45]. Based on this court's conclusion above, the Motion for Jurisdictional Discovery is now moot. Further, although the presiding judge, the Honorable Christine M. Arguello, may decline to adopt the undersigned's Recommendation on the Motion to Dismiss, this court finds a stay unwarranted under the

13

circumstances. Accordingly, this court **DENIES** the Motion for Jurisdictional Discovery as moot and **DENIES** the Motion to Stay for lack of good cause.

## CONCLUSION

For the reasons stated herein, I respectfully **RECOMMEND** that:

(1)     Defendant Barrett's Motion to Dismiss [#19] be **DENIED**.[4]

**IT IS FURTHER ORDERED** that:

(1)     Plaintiff's Motion for Jurisdictional Discovery [#30] is **DENIED as moot**; and

(2)     The Parties' Motion to Stay [#45] is **DENIED**.

DATED: January 4, 2019               BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

[4] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).